IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| KELLY WICKHAM,<br><br>Plaintiff,<br><br>vs.<br><br>COMMUNITY CORRECTION AND COUNSELING SERVICES, MICHAEL THATCHER, and DR. PATRICK J. McGREE,<br><br>Defendants. | CV 15-18-BU-JCL<br><br>ORDER |

Before the Court are (1) Defendants Community Counseling and Correctional Services, Inc. and Michael Thatcher's Fed. R. Civ. P. 56 motion for summary judgment, and (2) Defendant Dr. Patrick McGree's summary judgment motion. For the reasons discussed, the Court concludes the motions are properly granted.

**I.    Background**

Plaintiff Kelly Wickham, appearing pro se, is a state inmate convicted of various criminal offenses. He is presently incarcerated at the Montana State Prison.

Defendant Community Counseling and Correctional Services, Inc. ("Correctional Services") is a non-profit corporation which provides community-

1

based correctional services and programs for individuals convicted of crimes. Defendant Michael Thatcher is the Chief Executive Officer of Correctional Services. Defendant Dr. Patrick McGree is a physician who contracts with Correctional Services to provide medical services at its facilities.

In 2011 and 2012, Wickham was in custody residing at various correctional facilities operated by Correctional Services. He alleges he suffers from multiple sclerosis, and he claims Defendants refused to treat his asserted serious medical needs while he was at Correctional Services' facilities.

Invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331, Wickham alleges Defendants are liable for failing to treat his medical condition in violation of his rights protected under the Eighth Amendment to the United States Constitution. Further invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367, Wickham also asserts Defendants are liable for negligence or gross negligence, for violating his right to individual dignity protected under Article II, section 4 of the Montana Constitution, and for punitive damages.

## II.    Applicable Law - Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this

burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

Additionally, because Wickham is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to Defendant's summary judgment motion. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

### III. Discussion

#### A. Facts

The undisputed facts, except where specifically noted otherwise, are generally as follows:

3

Wickham asserts that in 2009 he was diagnosed with multiple sclerosis. And in 2011 a medical care provider recommended Wickham obtain a further medical consultation, and treatment with copaxone – a medication effective in treating multiple sclerosis. (Doc. 39 at 2 of 5.) He initially alleged that he had received "medical treatment" for his condition. (Doc. 100 at 2.) But during Wickham's deposition in this case he conceded that he was not diagnosed with multiple sclerosis in 2009, 2010 or 2011, and that he had not been prescribed copaxone. (Doc. 94-2 at 5, 10-11, and 23-24 of 41.)

On December 14, 2011, Wickham was transferred to the boot camp at the Treasure State Correctional Training Center in Deer Lodge, Montana operated by the Montana Department of Corrections (hereinafter referred to as the "Boot Camp"). Wickham initially alleged that medical personnel at the Boot Camp properly treated his multiple sclerosis condition. But Wickham admitted in his deposition that upon arrival at the Boot Camp he reported to the staff that he was not experiencing any multiple sclerosis symptoms, and he recognized he was not prescribed copaxone. (Doc. 94-2 at 14-15 of 41.)

In February, 2012, Wickham experienced some hearing loss while he was at the Boot Camp. Dr. Peter G. Von Doersten evaluated Wickham and opined that the hearing loss could be attributable to various different possible causes,

4

including multiple sclerosis. He prescribed prednisone and scheduled Wickham for an MRI. (Doc. 94-7 at 2 of 2.) Dr. Von Doersten's notes indicate that depending upon the results of the MRI, consideration may be given to the use of an intratympanic steroid injection. (*Id*.) Although the record in this case does not clearly establish whether the injections were medically necessary following the MRI, Wickham concedes he did not seek to obtain the injections for various reasons. (Doc. 94-2 at 15-16 of 41.)

On March 21, 2012, Wickham was transferred to Correctional Services' Connections Corrections Program facility. Wickham initially alleged that upon arrival, despite informing the staff of his asserted multiple sclerosis, the staff discontinued his medical treatment and ignored a prior recommendation that Wickham be referred to a neurologist.[1] But in his deposition Wickham conceded there was no multiple sclerosis treatment that he had previously been receiving which the staff at Connections Corrections Program discontinued. (Doc. 94-2 at 24 of 41.) And he concedes he told the staff he was not experiencing any symptoms from multiple sclerosis at that time. (Doc. 94-2 at 15 of 41.)

On March 27, 2012, Wickham had an appointment with Dr. McGree. Wickham agrees he reported to Dr. McGree at that time that he was "feel[ing]

---

[1] Wickham asserts the staff at the Boot Camp recommended he see a neurologist. (Doc. 94-2 at 16 of 41.)

better." (Doc. 94-2 at 16 of 41.) Dr. McGree recommended that Wickham not undergo the intratympanic steroid injection treatment, and Wickham did not oppose that recommendation. (Doc. 94-2 at 16 of 41.) And Wickham reported to staff at the Connections Corrections Program that his hearing was 100% restored. (Doc. 94-2 at 35 of 41.)

On April 17, 2012, Wickham again saw Dr. McGree requesting treatment for back and leg pain stemming from a 2010 injury. (Doc. 94-11; Doc. 94-2 at 4 & 29 of 41.) Dr. McGree prescribed an anti-inflammatory, and on April 22, 2012, Wickham wrote a note to Dr. McGree telling him the medicine he prescribed was working great. (Doc. 94-2 at 18-19 of 41.)

On May 20, 2012, Wickham was transferred to Correctional Services' Butte Pre-Release Center. At that time Wickham submitted a medical request asking for help getting medicine for his multiple sclerosis. (Doc. 94-14.) But when the nurse visited Wickham about his request the nurse reported that Wickham "Denies current problems." (*Id*.) But Wickham acknowledges his request was for either prednisone or the intratympanic steroid injection, not copaxone. (Doc. 94-2 at 31 of 41.)

Wickham saw Dr. McGree one last time on September 4, 2012. At that time he reported to Dr. McGree he was experiencing back pain – a long term problem

6

related to the 2010 injury. (Doc. 94-16.) Dr. McGree prescribed naprosyn. (*Id.*)

On September 27, 2012, Wickham was transferred to the Montana State Prison. Wickham concedes that prior to that time he had never previously been prescribed copaxone for multiple sclerosis, and he did not even know what the medication was. (Doc. 94-2 at 21 of 41.) The first time he was actually prescribed copaxone was on December 27, 2012, while at the prison.

### B. Statute of Limitations

By Order entered May 22, 2015, the then presiding District Judge Brian Morris dismissed Wickham's claims that were barred by the applicable statute of limitations. Specifically, the Court dismissed all claims arising on or before April 20, 2012. (Doc. 7 at 3.) Accordingly, the Court will address only those events and claims which arose after April 20, 2012, beginning with Wickham's custodial placement at the Connections Corrections Program.

### C. 42 U.S.C. § 1983 – Eighth Amendment Claim

Wickham's claim under the United States Constitution is cognizable under 42 U.S.C. § 1983. Section 1983 permits claims under federal law against a local governmental entity or state actor if the plaintiff can establish that the defendant was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*,

326 F.3d 1088, 1092 (9th Cir. 2003).

Wickham asserts Defendants violated his rights under the Eighth Amendment. That Amendment's prohibition against cruel and unusual punishment imposes liability upon prison officials who act with deliberate indifference to a prisoner's serious medical need. *Mendiola-Martinez v. Arpaio*, ___ F.3d ___, 2016 WL 4729476, *7 (9th Cir. 2016).

Although Wickham seeks to impose liability upon Correctional Services, Thatcher, and Dr. McGree, the undisputed evidence of Wickham's medical needs subsequent to April 20, 2012, reflect that those needs were minor, and were addressed by Defendants. The record also reflects that Wickham did not present any Defendant with complaints that he was then suffering from a serious medical condition or symptoms stemming from his multiple sclerosis. Instead, in April, 2012, Wickham complained only of leg and back pain, and he was satisfied with Dr. McGree's prescription for an anti-inflammatory. In May, 2012, although Wickham requested multiple sclerosis medications, he reported that he was not then experiencing current problems. Finally, in September, 2012, Wickham again reported only back and leg pain, and Dr. McGree prescribed a new pain reliever as Wickham had requested.

Based on the record, the Court finds Wickham has not identified or

presented evidentiary materials suggesting he suffered from a serious medical condition or need to which Defendants were deliberately indifferent. Therefore, the evidence does not present a triable issue of fact.

Nonetheless, as a threshold matter, Defendants first argue Wickham did not exhaust his administrative remedies with respect to his claim for medical care as required under 42 U.S.C. § 1997e. The Court agrees, and will dismiss this action on that basis.

### D. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act's exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) and *Booth v. Churner*, 532 U.S. 731, 739-741 (2001). This means a prisoner must properly follow and complete all steps for seeking administrative remedies as are prescribed by the prison administration, and the prisoner must comply with applicable deadlines and procedural rules before bringing an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Prison regulations define the exhaustion requirements, and exhaustion under section 1997e is mandatory. *Jones v. Bock*, 549 U.S. 199, 211, 218 (2007).

The defendant bears the ultimate burden of proving a prisoner failed to exhaust administrative remedies. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). For example, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citations and quotations omitted).

"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (June 6, 2016) (citation omitted). Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' " *Id*. at 1859 (citation omitted).

Defendants have satisfied their initial burden with respect to the issue of

whether Wickham properly exhausted his available administrative remedies.[2] During the relevant time frame – after April 20, 2012 – the Connections Corrections Program facility and the Butte Pre-Release facility each employed a grievance procedure for the inmates' use at those facilities. (Doc. 94-20 at 2 of 3; Doc. 94-21 at 2 of 3.) Each facility's procedure requires an inmate to complete and submit a grievance form, await the grievance coordinator's response to the grievance, and pursue appeals of an unsatisfactory response to the administrator of the facility, and to the Director of the Montana Department of Corrections. (*Id*.)

Defendants have submitted the affidavit testimony of the administrator of each subject facility – the Connections Corrections Program and the Butte Pre-Release Center. Each administrator affirmatively states their respective facility's administrative files do not contain a grievance form filed by Wickham. (Doc. 94-20 at 3 of 3; Doc. 94-21 at 3 of 3.) Furthermore, each administrator states that the relevant files do not contain records of any grievance appeal prosecuted by Wickham. (*Id*.) Thus, the Defendants have sustained their initial burden establishing that Wickham did not exhaust his available administrative remedies at either the Connections Corrections Program or the Butte Pre-Release Center.

---

[2]A summary judgment motion is the proper procedural device for determining whether administrative remedies have been exhausted. *Albino v. Baca*, 747 F.3d 1162, 1168-69 (9th Cir. 2014) (en banc).

In response to Defendants' motions relative to the exhaustion requirement, Wickham has submitted very limited evidentiary material. While he asserts in his brief that he "followed all parts of the Defendants['] administrative" remedies, he did not identify or present any evidentiary material supporting the assertion. Instead, Wickham relies solely on the affidavit testimony of a fellow inmate, Brad Banks, who was a roommate with Wickham at the Butte Pre-Release Center. Mr. Banks states he "helped Wickham file grievences [sic] relating to his requesting treatment for his multiple sclerosis." (Doc. 100-2 at 3 of 42.) But Wickham identifies no other evidence relevant to the exhaustion issue.

Based on the foregoing, although Wickham has sufficiently raised a genuine issue of material fact suggesting that he filed a grievance at the Butte Pre-Release Center, he has not presented evidence suggesting that (1) he also filed a grievance at the Connections Corrections Program facility, (2) he received an unsatisfactory response to his grievance from any individual at either the Connections Corrections Program facility or the Butte Pre-Release Center, or (3) he exhausted his available appeals with the administrator of either facility or the Director of the Montana Department of Corrections.

Furthermore, Wickham has not presented any argument or evidentiary material suggesting there existed "something in his particular case that made the

existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

Based on the foregoing, the Court concludes the record reflects that Wickham did not properly exhaust his available administrative remedies as required under 42 U.S.C. § 1997e(a). Therefore he is barred from bringing this action, and his federal claim is subject to dismissal.

### E. State Law Claims - Supplemental Jurisdiction

Wickham's complaint advances claims under Montana common law and the Montana Constitution. But since the Court is dismissing his federal claim, it must consider whether it should decline to exercise supplemental jurisdiction over his remaining claims pled under Montana law.

Federal law provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, the district court may decline to exercise supplemental jurisdiction for various reasons stated in the statute, including when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and courts may decline to

exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors[...] including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims[.]" *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

Wickham's claims under Montana law are matters of state and local concern, and should be resolved, in the first instance, by the courts of the State of Montana. Therefore, because the Court is dismissing Wickham's federal claim, the Court declines to exercise supplemental jurisdiction over his claims under Montana law. 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' summary judgment motions are GRANTED. Wickham's federal claim is DISMISSED pursuant to 42 U.S.C. § 1997e(a) based on his failure to exhaust his administrative remedies. And his claims under Montana law are DISMISSED without prejudice to his ability to pursue those claims in the courts of the State of Montana.

The Clerk of Court is directed to enter judgment accordingly.

DATED this 26th day of October, 2016.

　　　　　　　　　　　　　　　　　　／s／ Jeremiah C. Lynch
　　　　　　　　　　　　　　　　　　Jeremiah C. Lynch
　　　　　　　　　　　　　　　　　　United States Magistrate Judge